1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11    THERESA BROOKE,                        Case No.   1:25-cv-01149-JLT-CDB

12              Plaintiff,                    FINDINGS AND RECOMMENDATIONS TO
                                              DECLINE SUPPLEMENTAL JURISDICTION
13         v.                                 OVER PLAINTIFF'S STATE LAW CLAIMS

14    ARUN KUMAR PATEL, *et al.*,             (Docs. 1, 5)

15              Defendants.                   **14-DAY DEADLINE**

16

17

18    **Background**

19         On September 7, 2025, Plaintiff Theresa Brooke initiated this action with the filing of a

20    complaint against Defendants Arun Kumar Patel and Amita A. Patel, alleging violations of the

21    American with Disabilities Act (ADA) and California's Unruh Civil Rights Act. (Doc. 1). These

22    claims stem from alleged barriers Plaintiff encountered while visiting a facility owned, operated,

23    or leased by Defendants. *Id.* at 2-3. Defendants have not appeared.

24         On September 9, 2025, the undersigned ordered Plaintiff to show cause why the Court

25    should not decline to exercise supplemental jurisdiction over her Unruh Act claim in light of the

26    Ninth Circuit's decision in *Vo v. Choi*. (Doc. 4); *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022) (affirming

27    a district court's decision to decline supplemental jurisdiction over an Unruh Act claim); *see* 28

28    U.S.C. § 1367(c). Plaintiff timely filed a response to the Court's show cause order on September

                                              1

13, 2025. (Doc. 5). For the reasons given below, the undersigned will recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss these claims without prejudice to Plaintiff's refiling in state court.

**Governing Legal Standards**

Under 28 U.S.C. § 1367(a), a court that has original jurisdiction over a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Ninth Circuit has concluded that ADA and Unruh Act claims that derive from a common nucleus of operative fact "form part of the 'same case or controversy' for purposes of § 1367(a)." *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

However, even where supplemental jurisdiction over a claim exists under § 1367(a), the Court may decline jurisdiction over the claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c)(1)-(4).

Pertinent here, a court deciding whether to apply § 1367(c)(4) must undertake "a two-part inquiry." *Arroyo*, 19 F.4th at 1210. "First, the district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)." *Id.* (citations and internal quotation marks omitted). "Second, in determining whether there are compelling reasons for declining jurisdiction in a given case, the court should consider what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine articulated in [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)]." *Id.* (citations and internal quotation omitted).

After considering § 1367(c)(4) and California's requirements for bringing Unruh Act claims, "numerous district courts in California 'have declined to exercise supplemental jurisdiction over Unruh Act . . . claims brought alongside ADA claims.'" *Block v. Cal.-Fresno Invest. Co.*, No. 1:22-cv-1419 JLT SAB, 2023 WL 8675398, at 4 (E.D. Cal. Dec. 15, 2023) (quoting *Rutherford v. Nuway Ins. Agency Inc.*, No. SACV 21-00576-CJC-JDE, 2021 WL 4572008, at 1 (C.D. Cal. Apr. 1, 2021)). Underlying these decisions is "the recent confluence of several California-law rules [that] have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on federal-state comity." *Arroyo*, 19 F.4th at 1211.

Notably, Congress adopted the ADA to address the discrimination encountered by persons with disabilities, providing a private cause of action to seek injunctive, but not monetary, relief. *See id.* at 1205 (discussing background and relief available under the ADA). And the Unruh Act likewise prohibits disability discrimination, containing a provision, Cal. Civ. Code § 51(f), stating that a violation of the ADA also violates the Unruh Act. However, unlike the ADA, the Unruh Act allows a plaintiff to recover "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a).

In response to perceived abuses of the Unruh Act, California has enacted requirements for bringing such claims, which requirements the Ninth Circuit has assumed, without deciding, "apply only in California state court." *Vo*, 49 F.4th at 1170. For example, provisions were added (1) regarding the contents of demand letters, Cal. Civ. Code § 55.31; (2) imposing heightened pleading requirements, Cal. Civ. Code § 425.50(a); and (3) requiring an additional filing fee of $1,000 for so called "high-frequency litigants," Cal. Gov't Code § 70616.5(b), *see* Cal. Civ. Code § 425.55(b) (defining a high-frequency litigant to include "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation").

All of these requirements[1] apply to claims alleging a construction-related accessibility

---

[1] Cal. Civ. Code § 55.31(a); Cal. Civ. Code § 425.50(a); Cal. Gov't Code § 70616.5(a).

violation, defined as involving "a provision, standard, or regulation under state or federal law requiring compliance with standards for making new construction and existing facilities accessible to persons with disabilities," including those related to the ADA. Cal. Civ. Code § 55.52(a)(1), (6); *see* Cal. Civ. Code § 55.3(a)(2). By enacting such restrictions, California has expressed a "desire to limit the financial burdens California's businesses may face from claims for statutory damages under the Unruh Act." *Arroyo*, 19 F.4th at 1209 (internal quotations omitted). However, "Unruh Act plaintiffs have evaded these limits by filing in a federal forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements." *Id.* at 1213 (internal quotation omitted). Consequently, "the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded." *Id.*

Recently, the Ninth Circuit provided substantial guidance on this issue in *Vo v. Choi* in affirming a district court's order denying supplemental jurisdiction over an Unruh Act claim under § 1367(c)(4). *Vo*, 49 F.4th at 1168. In that case, the district court declined supplemental jurisdiction over the Unruh Act claim after giving the plaintiff the opportunity to respond and before addressing the merits of the case. *Id.* at 1168-69. In reviewing the district court's decision, the Ninth Circuit held that the district court sufficiently explained why the circumstances of the case were exceptional under § 1367(c)(4), agreeing with the district court that "it would not be 'fair' to defendants and 'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's procedural requirements by bringing their claims in federal court." *Id.* at 1171. The Court also affirmed the district court's finding that the balance of the *Gibbs* values—economy, convenience, fairness, and comity—provided compelling reasons to decline supplemental jurisdiction, stating that "the district court [properly] analyzed Vo's situation under the *Gibbs* values and determined that the values of fairness and comity favored not retaining jurisdiction over the claim." *Id.* at 1172. Accordingly, "[g]iven these very real concerns, in addition to the deferential standard of review, [the Ninth Circuit saw] no reason to hold that the district court abused its discretion in determining there were compelling reasons to decline jurisdiction over the Unruh Act claim." *Id.*

With these legal standards in mind, the Court addresses whether the relevant considerations of § 1367(c)(4) warrant declining the exercise of supplemental jurisdiction over Plaintiff's Unruh

1    Act claim.

2    **<u>Discussion</u>**

3        The Court begins with the first part of the two-step inquiry under § 1367(c)(4)—whether

4    the circumstances here are exceptional. *Vo*, 49 F.4th at 1171.[2]

5        As discussed above, California has enacted various requirements that apply to claims

6    alleging a construction-related accessibility violation. And if the Court were to exercise jurisdiction

7    over Plaintiff's Unruh Act claim, Plaintiff would be permitted to avoid these requirements. *See*

8    *Arroyo*, 19 F.4th at 1213 (noting that potential evasion of California's requirements met

9    exceptional-circumstances prong of § 1367(c)(4)). Further, such evasion would undermine

10   California's policy interests in enforcing its requirements—providing monetary relief but limiting

11   burdens on small businesses and disincentivizing plaintiffs' attorneys from obtaining "monetary

12   settlements at the expense of forward-looking relief that might benefit the general public." *Id.* In

13   her response to the Court's show cause order, Plaintiff and her counsel offer scant argument for

14   why such circumstances should not be deemed exceptional, and there is "little doubt that the first

15   prong [under § 1367(c)(4)] is satisfied here." *Vo*, 49 F.4th at 1171.

16       Turning to the second part of the inquiry—whether there are other compelling reasons for

17   declining jurisdiction—the Court considers the *Gibbs* values of economy, convenience, fairness,

18   and comity. *Vo*, 49 F.4th at 1171. Importantly, this case is an early stage of the litigation—no

19   Defendant has appeared and Plaintiff's claims have not been addressed. *See Arroyo*, 19 F.4th at

20   1214 (noting that the *Gibb*'s values did not support declining supplemental jurisdiction where the

21   case was at a "very late stage"). Thus, this is not a case "where it makes no sense to decline

22   jurisdiction . . . over a pendent state law claim that that court has effectively already decided." *Id.*

---

24       [2] The Court notes that Plaintiff's filing and supporting declarations in response to the
25   Court's show cause order (Docs. 5, 5-1, 5-2) appear largely boilerplate (*i.e.*, substantially identical)
     to filings Plaintiff and her counsel have made in response to similar orders to show cause in the
26   Central District. *See, e.g.*, *Brooke v. Onni 888 Olive Street LP* (2:23-cv-09342-HDV-KS) (Doc.
     11); *Brooke v. Gehna LLC* (2:24-cv-04889-SPG-MAR) (Doc. 12); *Brooke v. Rishabh Investment*
27   *LLC* (5:23-cv-00813-JGB-kk) (Doc. 10); *Brooke v. Century Sierra LLC* (5:23-cv-00810-JGB-kk)
     (Doc. 10). The filings appear similarly boilerplate to filings made by Plaintiff and her counsel in
28   response to orders to show cause in this Court. *See, e.g.*, *Brooke v. Prasad* (1:25-cv-01143-CDB)
     (Doc. 5); *Brooke v. Bharat, et al.* (1:25-cv-01145-JLT-CDB) (Doc. 5).

Notably, Plaintiff makes no argument that the stage of this case warrants exercising jurisdiction, setting forth only the unremarkable proposition that "[a]lthough the case is early, it is not automatic that Unruh should be declined …" (Doc. 5 at 4).

Moreover, in light of the above discussion of California's requirements for Unruh Act claims, it would not be fair, nor would comity be served, by allowing Plaintiff's Unruh Act claim to proceed without the state court being able to enforce its policy interests as reflected in its various procedural requirements. *Arroyo*, 19 F.4th at 1213 (noting "comity-based concerns that California's policy objectives in this area were being wholly thwarted" by plaintiffs being able to bring Unruh Act claims in federal court).

On this issue, Plaintiff and her counsel dispute in their accompanying declarations (Doc. 5-1; Doc. 5-2) whether they would be considered high-frequency litigants and would otherwise have to meet certain California requirements, such as paying the $1,000 filing fee in state court.[3] Plaintiff asserts that she would not be classified as a high-frequency litigant because she herself has never filed any complaints because it is her counsel who filed them on her behalf.  *See* (Doc. 5-1). Plaintiff's counsel asserts that he would not be classified as a high-frequency litigant because, in the preceding 12 months, he has only represented "one person who alleges construction accessibility cases," namely the Plaintiff and, thus, he does not meet the "10-plaintiff threshold." *See* (Doc. 5-2; citing Cal. Civ. Proc. Code § 425.55(b)(2)).

The Court notes it need only determine whether California's requirements are implicated, not whether they are in fact met. As the Ninth Circuit noted in *Vo*, whether a Plaintiff "has satisfied the heightened pleading requirements" imposed in California is a question for the state court because "[f]orcing the district court to determine if [this is] in fact true would itself run afoul of the *Gibbs* values—especially comity," and would deprive California of playing its "critical role in

---

[3] The Court need not determine whether Plaintiff is in fact a high-frequency litigant. *Vo*, 49 F.4th at 1174 (noting that court was not required to determine whether the plaintiff was in fact a high-frequency litigant). In all events, from a review of filings in this district and the Central District, it does not appear to be a close call whether Plaintiff and counsel are high-frequency litigants. *See Brooke v. Patel*, No. EDCV 23-1037 JGB (KKx), 2023 WL 4843073, at *4 (C.D. Cal. June 29, 2023) ("While the Court need not delve into statutory interpretation, it observes that Brooke is nonetheless a serial plaintiff whose Counsel has filed ten or more construction-related accessibility violation complaints on her behalf.").

1    effectuating the policies underlying [its] reforms." *Vo*, 49 F.4th at 1173-74 (internal citation

2    omitted).

3          Next, Plaintiff argues that requiring her to bring a second action in state court would be

4    duplicative and would increase the costs of the action, and "comity is only one of four [*Gibbs*]

5    factors," with the other three factors favoring retention. (Doc. 5 at 3-4). In her brief, Plaintiff does

6    not acknowledge nor cite to *Vo*. *See generally* (Doc. 5).

7          As an initial matter, this argument improperly assumes that Plaintiff will be successful in

8    this action. However, even accepting such an assumption, the fact that the litigation could prove

9    duplicative or increase costs does not, in light of the other considerations, warrant retaining

10   jurisdiction. As one court has concluded, "if plaintiff legitimately seeks to litigate this action in a

11   single forum, plaintiff may dismiss this action and refile it in a state court in accordance with the

12   requirements California has imposed on such actions." *Garibay v. Rodriguez*, No. CV 18-9187 PA

13   (AFMX), 2019 WL 5204294, at 6 (C.D. Cal. Aug. 27, 2019). Moreover, it is California's

14   prerogative to impose a heightened filing fee for high-frequency litigants in an effort to curb abuses

15   of the Unruh Act at the risk of the fee being ultimately paid by defendants. It would undermine

16   comity and fairness were Plaintiff permitted to proceed with her Unruh Act claim in light of

17   California's policy concerns. *See Vo*, 49 F.4th at 1172 ("the district court [properly] analyzed *Vo*'s

18   situation under the *Gibbs* values and determined that the values of fairness and comity favored not

19   retaining jurisdiction over the claim.").

20         Lastly, Plaintiff's arguments concerning federal preemption of the Unruh Act's procedures

21   are unavailing. (Doc. 5 at 4-6); *see Brooke v. Onni 888 Olive St. LP*, No. 2:23-CV-09342 HDV

22   (KSx), 2023 WL 9689134, at *3 (C.D. Cal. Nov. 29, 2023) ("By declining to exercise supplemental

23   jurisdiction, the Court is merely honoring the express terms of the ADA, which provides a federal

24   private right of action for injunctive relief and an award of attorneys' fees. That is what Congress

25   provided in the form of relief. To the extent Plaintiff seeks greater remedies allowed under

26   California law, that forum is open to her.").

27         Accordingly, in light of the two-step inquiry under § 1367(c)(4), the Court concludes that

28   the circumstances of this case are exceptional and there are other compelling reasons to decline

supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims. *See*, *e.g.*, *Orosco v. Monrroy Enters. LLC*, No. 2:23-cv-07818-MEMF (KSx), 2023 WL 10407115, at *5 (C.D. Cal. Nov. 30, 2023) (declining to exercise supplemental jurisdiction over and dismissing Plaintiff's California Unruh Act, Disabled Persons Act, Health & Safety Code and negligence claims following *Vo/Arroyo* analysis); *Kim v. Vegara*, No. EDCV 22-281 JGB (SHKx), 2022 WL 17080182, at *5 (C.D. Cal. Oct. 5, 2022) (same); *Benford v. Hall*, No. CV 22-03337-RSWL-ASx, 2022 WL 20273588, at *3 & n.3 (C.D. Cal. July 18, 2022) (same).

**Conclusion and Recommendation**

For the reasons given above, IT IS RECOMMENDED as follows:

1. The Court DECLINE to exercise supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(c)(4).

2. Plaintiff's Unruh Act claims be dismissed without prejudice to Plaintiff's filing of these claims in state court.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **September 15, 2025**

UNITED STATES MAGISTRATE JUDGE